UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:20-cr-84-MMH-JRK

CHRISTOPHER DOZIER

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B.

Handberg, United States Attorney for the Middle District of Florida, and the

defendant, CHRISTOPHER DOZIER, and the attorney for the defendant, Thomas

M. Bell, mutually agree as follows:

**A.    Particularized Terms**

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One, Three, and

Four of the Indictment.  Counts One and Three charge the defendant with Hobbs

Act robbery, in violation of 18 U.S.C. § 1951.  Count Four charges the defendant

with brandishing a firearm during and in relation to a crime of violence, in violation

of 18 U.S.C. § 924(c)(1)(A)(ii).

2.    Minimum and Maximum Penalties

Counts One and Three each carry a maximum penalty of a term of

imprisonment of not more than 20 years, a fine of not more than $250,000 or twice

Defendant's Initials _CЯOD_                         AF Approval _MT_

the gross gain or loss caused by the offense, whichever is greater, or both imprisonment and a fine, a term of supervised release of not more than three years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum sentence of two years of imprisonment as well as the possibility of an additional term of supervised release.

Count Four carries a mandatory minimum term of imprisonment of seven years of imprisonment up to a maximum sentence of not more than life, to be served consecutively to any term of imprisonment on any other count, a fine of not more than $250,000, or both imprisonment and a fine, a term of supervised release of not more than five years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum sentence of five years of imprisonment as well as the possibility of an additional term of supervised release.

Cumulatively, Counts One, Three, and Four carry a mandatory minimum term of imprisonment of seven years and a maximum term of life plus forty years, a fine of not more than $750,000 or twice the gross gain or loss caused by the offenses charged in Counts One and Three plus $250,000, whichever is greater, or both imprisonment and a fine, a term of supervised release of not more than five years, and a mandatory special assessment of $300, due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum

Defendant's Initials _CⱯOᗡ_        2

sentence of not more than nine years of imprisonment as well as the possibility of an additional term of supervised release.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One and Three are:

| | |
|---|---|
| First: | the defendant knowingly acquired someone else's personal property; |
| Second: | the defendant took the property against the victim's will, by using actual or threatened force, or violence, or causing the victim to fear harm, either immediately or in the future; and |
| Third: | the defendant's actions obstructed, delayed, or affected interstate commerce. |

The elements of Count Four are:

| | |
|---|---|
| First: | The defendant committed the violent crime charged in Count Three of the Indictment; and |

Defendant's Initials _CE OP_          3

Second: That during and in relation to that violent crime, the defendant knowingly brandished a firearm as charged in the Indictment.

4. Count Dismissed

At the time of sentencing, the remaining count against the defendant, Count Two of the Indictment, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. Guidelines Recommendation

The parties jointly recommend, based on available documents and information, that the defendant is not a career offender pursuant to the applicable Sentencing Guidelines set forth in USSG §§ 4B1.1 and 4B1.2, and that the defendant not be sentenced as a career offender. The defendant understands that this recommendation may change after the United States Probation Office completes the presentence report, and that the recommendation is not binding on the Court. The defendant understands that if the recommendation changes and/or is not accepted by the Court, the defendant will not be allowed to withdraw from his guilty plea.

Defendant's Initials _CFDD_       4

7.   Mandatory Restitution to Victims of Offenses of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), the defendant agrees to make full restitution to the victims of the offenses, including but not limited to Best Arcade in the amount of $1,877.00, and Allied Universal in the amount of $300.00.

8.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant

Defendant's Initials _CCDb_          5

agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: approximately $1,877.00 in proceeds the defendant admits he obtained as the result of the commission of the offense charged in Count Three, as well as: a Rohm Model RG14S .22 caliber pistol, serial number Z083077; and five rounds of .22 caliber ammunition, which assets were used during the commission of the offenses charged in Counts One, Three, and Four.

The defendant acknowledges and agrees that (1) the defendant obtained approximately $1,877.00 as a result of the commission of the offense(s) and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained,

Defendant's Initials _CPD_                    6

as the result of the offense(s) of conviction and, further, the defendant consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence and the United States shall not be limited to the forfeiture of the substitute assets, if any, specifically listed in this plea agreement.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not

Defendant's Initials _C &O &_            7

properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

Defendant's Initials _c f D b_                    8

The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement

Defendant's Initials _C Ɛ ω_           9

shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.** **Standard Terms and Conditions**

    1.    <u>Restitution, Special Assessment and Fine</u>

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is

due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _CFDP_                    11

5.  <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States

Defendant's Initials _CADR_            13

Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any

Defendant's Initials _CFDD_          14

discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such

Defendant's Initials C̲F̲U̲b̲          15

offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this _21_ day of _January_ 2022.

ROGER B. HANDBERG
United States Attorney


_CHRISTOPHER DOZIER_
CHRISTOPHER DOZIER
Defendant

_DAVID B. MESROBIAN_
DAVID B. MESROBIAN
Assistant United States Attorney


_THOMAS M. BELL_
THOMAS M. BELL
Attorney for Defendant

_FRANK TALBOT_
FRANK TALBOT
Assistant United States Attorney
Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:20-cr-84-MMH-JRK

CHRISTOPHER DOZIER

## PERSONALIZATION OF ELEMENTS

**As to Count One**:

1.    On or about May 24, 2019, in Jacksonville, in the Middle District of Florida, did you knowingly and unlawfully take personal property consisting of United States currency belonging to 777 Arcade?

2.    Did you take the property against the will of the 777 Arcade employee by using actual or threatened force, or violence, or causing the victim to fear harm, either immediately or in the future?

3.    Did your actions obstruct, delay, or affect interstate commerce?

**As to Count Three**:

1.    On or about June 19, 2019, in Jacksonville, in the Middle District of Florida, did you knowingly and unlawfully take personal property consisting of United States currency belonging to Best Arcade?

2.    Did you take the property against the will of the Best Arcade employee by using actual or threatened force, or violence, or causing the victim to fear harm, either immediately or in the future?

3.    Did your actions obstruct, delay, or affect interstate commerce?



**As to Count Four**:

1. On or about June 19, 2019, in Jacksonville, in the Middle District of Florida, did you commit the violent crime charged in Count Three of the Indictment, that is, Hobbs Act robbery?

2. During and in relation to that violent crime, did you knowingly brandish a firearm as charged in the Indictment?

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:20-cr-84-MMH-JRK

CHRISTOPHER DOZIER

## FACTUAL BASIS

On May 24, 2019, the defendant, CHRISTOPHER DOZIER, committed an

armed robbery of the 777 Arcade game room located at 2465 New Berlin Road,

Jacksonville, Florida.  As captured on the business's video surveillance system,

victim N.D., an employee of 777 Arcade, opened the door of the business to admit

DOZIER at approximately 11:53 a.m.  N.D. then walked over and unlocked the

door to the cashier's office.  As she did so, DOZIER attacked her from behind and

forced his way into the office, striking N.D. in the head ~~and causing bodily injury~~.

DOZIER then removed a .22 caliber revolver from his shorts pocket and pointed it at

N.D., who put up her hands.  DOZIER opened the cash register and removed

United States currency.  After doing so, DOZIER removed a spool of wire from his

pocket and bound N.D.'s hands.  He then took her cellular phone, and escaped in a

vehicle waiting outside, which was driven by his accomplice, B.C.  The money taken

by DOZIER during the robbery was found in the parking lot outside the business,

apparently having been dropped, and N.D.'s phone was recovered some distance away down New Berlin Road. DOZIER's face and arm tattoo were both clearly visible on the surveillance video.

On June 19, 2019, DOZIER committed a similar armed robbery of the Best Arcade game room, located at 1440 Dunn Avenue, Jacksonville, Florida. As captured on the business's video surveillance system and surveillance video from neighboring businesses, at approximately 5:00 a.m., DOZIER arrived as a passenger in a vehicle driven by an accomplice. He stood outside of the game room smoking for several minutes, until victim R.C., a security guard employed by Allied Universal who was contracted to work at Best Arcade, let him into the business. As seen on the surveillance video, DOZIER discarded his cigarette before entering. When R.C. turned his back to lock the door, DOZIER pulled out his .22 caliber revolver and attacked R.C. from behind, pointing his gun at R.C. and then removing a Smith & Wesson 9mm pistol (which belonged to Allied Universal) from R.C.'s holster. Holding both guns, DOZIER marched R.C. over to the cashier area, where victim B.H., an employee of Best Arcade, was working. DOZIER pointed the gun at B.H., and demanded that she provide him with money. B.H. placed $1,877 in United States currency from the register into a backpack and handed the backpack to DOZIER, who ran out of the arcade and escaped in the vehicle waiting outside with both the money and the guard's firearm. DOZIER's face was again clearly visible on the surveillance video.

Defendant's Initials _C𝓕𝒟𝒟_          21

After law enforcement identified DOZIER as the suspect in the robberies and interviewed his family members to attempt to locate him, the defendant fled to Massachusetts. On June 29, 2019, he was arrested in Quincy, Massachusetts, pursuant to an unrelated state warrant. At the time of his arrest, he was carrying a Rohm Model RG14S .22 caliber pistol, serial number Z083077, loaded with five rounds of .22 caliber ammunition, as well as a small amount of narcotics. He was charged and convicted of possessing these items in Massachusetts.

While DOZIER was incarcerated at the detention facility in Massachusetts, he made a number of calls on the recorded jail phone system to his accomplice, B.C., during which they discussed the robberies and the law enforcement investigation. During a call on July 2, 2019, shortly after his arraignment for his Massachusetts case, DOZIER stated to B.C. that he was better off with his case in Massachusetts because "that motherfucking game room shit would be over, that would have got me in a lot more trouble than this." During a call on July 16, 2019, DOZIER and B.C. discussed the fact that law enforcement was attempting to talk to B.C.'s father, J.B., who had previously identified DOZIER to the Jacksonville Sheriff's Office as the robber in photographs taken from the 777 Arcade and Best Arcade surveillance video. DOZIER instructed B.C. to tell J.B. that he should not identify DOZIER as the robber because "that shit will get me a lot of fucking time."

The Federal Bureau of Investigation ("FBI") obtained a search warrant for DOZIER's cell phone, seeking evidence related to the game room robberies. Among

Defendant's Initials _CHDD_                22

other things, the FBI found messages sent by DOZIER to his mother on June 19, 2019. At approximately 6:10 a.m., an hour after the Best Arcade robbery, DOZIER texted his mother, "Ma i got some money i gotta lay low i need you to go in my room and get my license the lights were gonna get cut off today but i got the money," and "Ma u dont know nothing ok ill need u to meet me later to pay the lights and see what u and i got together." Later that day, DOZIER texted his mother, "Ma im going to boston i got the money and i need a break." The FBI also found messages sent by DOZIER on June 22, 2019, in which he discussed selling a Smith & Wesson 9mm pistol, the same type of pistol taken from the guard during the Best Arcade robbery.

The FBI also obtained a search warrant for DOZIER's DNA. The Florida Department of Law Enforcement ("FDLE") compared the sample of DOZIER's DNA to profiles obtained from the robbery crime scenes. The FDLE analyst found that DOZIER was "included as a possible contributor to the mixed DNA profile" obtained from one of the cigarettes recovered from outside the Best Arcade on June 19, 2019. The analyst stated that "the observed mixed DNA profile is greater than 700 billion times more likely to occur if the sample originated from Christopher Dozier and two unrelated individuals than from three unrelated individuals."

At the time of these offenses, both the 777 Arcade and the Best Arcade were businesses the activities of which affected interstate commerce by, among other things, offering gaming machines for use by their customers for which the proceeds

were distributed in United States currency, and for which the hardware and software were manufactured in a foreign country, imported to the United States, and then shipped in interstate commerce to Florida.